**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ] | |
| | ] | |
| v. | ] | Cr. No. 1:25-cr-81-SM-AJ |
| | ] | |
| MICHAEL DARCY | ] | |

**DEFENDANT'S SENTENCING MEMORANDUM**

NOW COMES the Defendant, Michael Darcy, by and through counsel, Jaye Rancourt, and hereby submits this sentencing memorandum respectfully asking that the Court sentence him to time-served followed by three (3) years of supervised release, mandatory assessments and restitution. This sentence satisfies the purposes of sentencing outlined in 18 U.S.C. § 3553 and is sufficient, but not greater than necessary, to comply with the purposes of sentencing.

In support of this sentencing request it is stated as follows:

## I. Introduction and Summary of the Case

Michael Darcy fell from a position of significant respect in the community to being convicted of a federal crime. His actions constitute a first offense that did not involve violence or drugs. On October 8, 2025, he was indicted on five (5) counts of Bank Fraud in violation of 18 U.S.C. § 1344 for drafting approximately eighty-three (83) unauthorized checks off his employer's bank account between December 2019 and December 2024, with nearly all of the unauthorized checks occurring from the fall of 2023 forward. Mr. Darcy forged his employer's signature and deposited these funds into his personal checking account. He appeared for his Initial Appearance on November 6, 2025, and was released on conditions. On July 8, 2026, he signed an acknowledgement and waiver of rights and subsequently pled guilty on July 14, 2026. Sentencing in this matter is scheduled for November 10, 2026. Mr. Darcy has been fully compliant with the terms of pre-trial release.

To his credit, since December 2024, when his employer became aware of Mr. Darcy's fraudulent activity, Mr. Darcy has taken, and continues to take, the necessary and appropriate steps to understand what contributed and/or caused this criminal conduct. These efforts include attending counseling/mental health treatment, working multiple jobs, setting aside money to contribute to restitution, and agreeing to forfeit his share of the proceeds from the sale of his marital home towards his restitution. Mr. Darcy is actively taking the appropriate steps to demonstrate his remorse and to also address the underlying cause of his criminal behavior in order to protect society and ensure it never happens again.

## II. Sentencing Framework

Section 3553(a) of Title 18 "specifies the factors courts are to consider in imposing a sentence. The list of factors is preceded by what is known as the parsimony principle, a broad command that instructs courts to 'impose a sentence sufficient, but not greater than necessary, to comply with' the four identified purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation." *Dean v. United States*, 581 U.S. 62, 67 (2017) (quoting 18 U.S.C. § 3553(a)). That same statute directs the sentencing court "to take into account 'the nature and circumstances of the offense and the history and characteristics of the defendant,' as well as 'the need for the sentence imposed' to serve the four overarching aims of sentencing. The court must also consider the pertinent guidelines and policies adopted by the Sentencing Commission." *Id.* (quoting 18 U.S.C. § 3553(a)).

While the applicable guideline sentencing range is "the starting point and initial benchmark," *Gall v. United States*, 552 U.S. 38, 49 (2007), "the district judge should consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an

individualized assessment based on the facts presented." *Id*. at 49-50; *see also Pepper v. United States*, 562 U.S. 476, 490-91 (2011) ("Congress could not have been clearer in directing that '[n]o limitation . . . be placed on the information concerning the background, character, and conduct' of a defendant that a district court may 'receive and consider for the purpose of imposing an appropriate sentence.'") (*quoting* 18 U.S.C. § 3661).

## III. United States Sentencing Guideline Calculations

Mr. Darcy objects to the inclusion of a two-point adjustment for causing substantial financial hardship pursuant to U.S.S.G. 2B1.1. In considering whether Mr. Darcy's actions caused substantial financial hardship, the Court shall consider, among other things whether the offense resulted in the victim:

(i) Becoming insolvent;
(ii) Filing for bankruptcy;
(iii) Suffering a substantial loss of retirement, education, or other savings or investment funds;
(iv) Making substantial changes to his or her employment (such as postponing his or her retirement plans);
(v) Making substantial changes to his or her living arrangements (such as relocating to a less expensive home); and
(vi) Suffering substantial harm to his or her ability to obtain credit.

Upon information and belief, the victim in this case did not suffer any of these harms. No financial statements or documents have been presented to substantiate any claims of substantial financial hardship. Mr. Phelps has completed two victim impact statements, neither has provided sufficient information to sustain this enhancement. A review of cases indicates that a claim of substantial financial hardship must be accompanied by some dollar figures to substantiate the claims.[1]

While Mr. Phelps has alluded to delaying retirement, it has been presented as a possibility

[1] *United States v. Kitts*, 27 F.4th 777, (1st Cir. 2022); *United States v. Iwuanyanwu*, 69 F.4th 17 (1st Cir. 2023); *United States v. Paulson*, 871 F.3d 261 (3rd Cir. 2017).

and not an absolute certain. It is more likely that Mr. Phelps may have postponed his retirement because of the loss of Mr. Darcy as an employee rather than the loss of funds. When Mr. Phelps was interviewed by agents in this matter, he stated that "[he] has kept Darcy on as an employee because Darcy knows how to run the business and is good at it. [He] kept Darcy on because he wants to keep the income stream from his business without having to run the business himself. Phelps does not think Darcy will repeat the mistake." In fact, Mr. Phelps' desire to have minimal involvement in running his company was the reason he continued to employ Mr. Darcy for nearly a year after he discovered Mr. Darcy's criminal activity. When Mr. Phelps ultimately fired Mr. Darcy, he was likely required to return to work and possibly delay retirement. That is not due to a financial hardship, that is due to the loss of an employee. This also applies to Mr. Phelps' statement to probation that he was required to increase his work hours from part-time to full-time.

While Mr. Darcy is sympathetic to Mr. Phelps and feels horrible for the harm that his actions caused his business, the information currently provided is insufficient to find a substantial financial hardship.

If the Court agrees with Mr. Darcy's position on this enhancement, the appropriate U.S.S.G. calculation becomes:

| | | |
|---|---|---|
| Base offense level: | 7 | |
| Loss amount: | +12 | |
| Abuse of a position of trust: | + 2 | |
| Adjusted offense level: | 21 | |
| Acceptance of Responsibility: | - 3 | |
| Zero-point offender adjustment: | - 2 | |
| U.S.S.G. calculation: Offense level | 16 | =21-27 months |

## IV. Personal History and Characteristics of Mr. Darcy

### A. Mr. Darcy's Childhood, Military Service, and Post-Military Life

Mr. Darcy was born in Vermont and is the oldest of three children born to married parents. He and his siblings were raised in lower socio-economic circumstances in home(s) free from abuse,

substance abuse, or trauma. During his childhood, his family moved frequently, often following better job opportunities, which resulted in the family relocating from Vermont to Texas, where Mr. Darcy's brother and sister were born. His parents divorced when he was nine and he subsequently moved back to Vermont with his mother and siblings. His father returned to Vermont shortly after. Upon their return to Vermont, Mr. Darcy, his mother, and his siblings moved in with his maternal grandmother, who assisted his newly single mother with caring for her children. When Mr. Darcy was in the sixth grade, the family left his grandmother's home and moved to Newfane, Vermont. This resulted in him stepping into her role as an additional caretaker and he was left in charge of raising his younger siblings while his mother worked nights.

The family continued to move around Vermont for the remainder of Mr. Darcy's adolescence. Throughout this time, Mr. Darcy and his siblings would see his father on Friday evenings and into Saturday. The instability caused by the family's frequent moves and the burden of being a caretaker to his younger siblings while still being a child/teenager resulted in Mr. Darcy feeling like he was "always the new kid" and he indicated he "didn't form many deep attachments." He felt isolated and alone a lot of the time.

Despite Mr. Darcy finding it hard to foster new friendships, Mr. Darcy was able to form some friendships towards the end of high school. After graduation Mr. Darcy and his best friend, Brian, planned to move to Burlington, VT and secured an apartment. Right as they were scheduled to move, Brian tragically died by suicide. Brian's death caused significant shock and grief to Mr. Darcy and for a period of time he lost his equilibrium, trying to process the loss of his best friend, hold down a job, and live in the apartment he and Brian had rented together. Ultimately, Mr. Darcy left the apartment stating, "I couldn't be in the Burlington apartment alone," and entered a period of listlessness, bouncing around from job to job, feeling unsettled. As he described it, "it was a

pretty dark time for me."

With hopes of finding a purpose and stability, Mr. Darcy joined the United States Navy when he was twenty-two. During his service, he was deployed several times, including to Dubrovnik, Crete, Corfu, Turkey, and Dubai, he received several commendations, ribbons and medals, including two Good Conduct Medals, Meritorious Unit Commendation, campaign ribbons, Armed Forces Expeditionary Medal, National Defense Service Medal, and the Sea Service Deployment Ribbon. He was honorably discharged after six years of service.

Towards the end of his military career, Mr. Darcy participated in Civil War reenactments, where he met his wife.[2] The two married when he was twenty-eight and their son was born two years later. Mr. Darcy describes becoming a parent

> "Being a parent is the best thing I've ever done, and it is the best about me. I love my son with every piece of my being; there is no other way to put it. I was perfectly content to stay up till 3 am every night after a full day of work. Driving my son as a newborn around the back roads of southern Vermont every night will always be some of my fondest memories.
>
> Being a parent was exhausting, exhilarating, and the greatest time of my life. Not only did I feel important and needed, but I have had the honor to watch the person my son has become and know that I had a part in that. He is both the greatest and most important thing I have ever done. I am still awed every day by the things he accomplishes and takes on. And I will always treasure the quiet moments we spend together."

Mr. Darcy and his wife are currently going through a divorce, which is a direct result of Mr. Darcy's criminal conduct. Mr. Darcy is fully aware that he "ruined a really good thing" and feels great remorse for the hurt he caused his family. His actions have also had a significant impact on his relationship with his son, resulting in a prolonged period of minimal contact between the two. As part of the divorce, the marital home is under contract to be sold, with the closing for likely to occur prior to sentencing. Upon the sale of the house, Mr. Darcy will relocate to Vermont to

[2] Mr. Darcy had a brief prior marriage that ended in divorce while he was in Navy. Mr. Darcy and his first wife did not have any children.

reside with his sister.

Prior to this criminal behavior, Mr. Darcy was a well-respected member of his community. He served as Selectman in his town of Hinsdale, New Hampshire. He was elected for three, three-year terms in this position. Despite being a "socially reserved person," he enjoyed being active in his community and "being part of the process." He also served as a member of the parent-teacher organization for his son's school.

Like many people in 2020, the isolation associated with the Covid-19 pandemic severely impacted Mr. Darcy. Even before the pandemic he was alone at work all day. He was no longer serving as Selectman with the town of Hinsdale. His involvement in political and community organizing has been suspended. He had very few friends and any group activities related to his hobbies were not happening as the world was shut down. He found himself increasingly isolated, causing him to become very lonely and depressed. As he put it, "I can look back now and say I was incredibly lonely."

Mr. Darcy had viewed adult pornography occasionally prior to this time. As his loneliness increased, he found companionship with "cam girls" through adult pornography websites. These contacts began as sexual in nature. After a short time, this contact evolved to something closer to companionship, with Mr. Darcy engaging with the "cam girl" as someone to interact with during the workday, more akin to a coworker or friend. These websites charge by the minute, and, as he spent hours a day communicating with one woman online, he also began to accumulate an immense amount of debt. As the debts increased, his desperation caused him to make incredibly bad decisions, resulting in these pending charges.

**B. Mental Health**

Prior to these allegations Mr. Darcy had never committed a crime. He's never had

involvement with the criminal justice system and was a respected member of the community. This behavior was aberrant and he found himself at a loss to explain or understand his reckless criminal behavior. After he was confronted by local police and Mr. Phelps[3], Mr. Darcy began to engage in counseling in an attempt to understand what brought him to this low point in his life and he remained engaged in counseling in counseling as long as he could. During that time, Mr. Darcy was diagnosed with anxiety disorder and adjustment disorder. When he was indicted federally for these offenses, he was let go from his employment. He lost health insurance and could no longer afford to engage in counseling. Once he regains health insurance, he intends to resume mental health counseling.

***i. Evaluation by Dr. Bader***

Mr. Darcy participated in a Psychological Evaluation with Dr. Shannon Bader, Ph.D., ABPP, in an attempt to understand his behavior and to explain his behavioral pattern and criminal conduct to the Court.[4] That psychological evaluation found that Mr. Darcy's pattern of behavior surrounding his visiting with women on adult websites was akin to an addiction. Ex. A at 4.

> If Mr. Darcy was consuming alcohol or illegal substances instead of a website, he would qualify for a clinical addiction diagnosis. However, the Diagnostic and Statistical Manual of Mental Disorders does not recognize pornography addiction or internet addiction as a clinical diagnosis1. These kinds of repetitive actions are instead termed *behavioral addictions* and not considered mental disorders.

*Id.* As stated by Dr. Bader, Mr. Darcy's description of his desire to cease the behavior but experiencing an inability to stop the behavior which "fits the characteristic pattern of a behavioral addiction; the person has an intention or desire to stop unwanted behavior but has significant

[3] Mr. Phelps was also deeply concerned about the impact this investigation would have on Mr. Darcy's mental health. Mr. Phelps required Mr. Darcy to participate in counseling while he continued to work at the company.

[4] *See* Psychological Evaluation, attached as exhibit A (filed under seal).

difficulty interrupting the cycle."[5] *Id.* at 5. Further, his isolation and loneliness, particularly compounded by hours alone at the workplace, resulted in a vulnerability to the companionship offered by these pay by the minute websites. *Id.* at 6.

Dr. Bader suggests that Mr. Darcy would benefit from individual counseling to address his feelings of loneliness, cope with discomfort in appropriate ways, his need for social interaction, "focus on ways to establish long-standing, meaningful connections throughout his life." *Id.* Additionally, Mr. Darcy would benefit from "developing an understanding that "compulsively using the private video sessions improved his sense of companionship and connectedness for temporary periods of time." *Id.* His counseling should focus on other ways to stay connected. Dr. Bader also suggests that Mr. Darcy would benefit from financial literacy classes including learning to budget and to "discuss decisions about spending, pressures he feels to purchase things for others, and how he associates money with personal worth or value." *Id.* Mr. Darcy has expressed a willingness and motivation to understand what led to this behavior and ways to protect against it happening again.

**C. Life Since Indictment**

Mr. Darcy continues to work two jobs to support himself and his family. He had been paying the mortgage on the family home through his employment. That burden will be relieved upon sale of the home. At that time, Mr. Darcy will be able to set funds aside to pay additional funds towards his owed restitution. Mr. Darcy voluntarily informed the Government of desire to sell the family home and reached an agreement to pay all but a modest sum of his proceeds from

[5] Mr. Darcy's former employer appears to be particularly distressed by the fact that he used a great deal of the stolen funds for pornography websites. Prior to being made aware of this fact, his employer specifically stated to the police that he did not want Mr. Darcy to be incarcerated for his theft from the business. He kept Mr. Darcy on as an employee after he confessed to taking the funds in question. It is unknown if Mr. Phelps would have a different mindset if he were aware of the cause of Mr. Darcy's addiction to these pay by the minute websites.

this sale to his owed restitution. Mr. Darcy feels extreme remorse and shame for his actions and believes that remaining free to work and pay Mr. Phelps back for his illegal conduct is the most productive use of his time.

## V. Conclusion

The paramount directive in 18 U.S.C. §3553(a) is that the Court must impose a sentence that is "sufficient, but not greater than necessary," to achieve the purposes of the sentencing statute. 18 U.S.C. §3553(a). Mr. Darcy respectfully asks the Court to consider his personal characteristics and the nature of the offense and sentence him to time-served followed by three years supervision. This sentence achieves the purpose of sentencing as set forth in the statute.

No separate memorandum of law is filed as all points and authorities are contained herein.

Respectfully submitted,

*/s/ Jaye Rancourt*
Jaye Rancourt, AFPD
Federal Public Defender Office
(603) 226-7360
Jaye_Rancourt@fd.org
N.H. Bar #14235

## CERTIFICATE OF SERVICE

I hereby certify that the above document was served on the following person on November ______, 2026, and in the manner specified herein: electronically served through CM/ECF to AUSA Alexander S. Chen.

*/s/ Jaye Rancourt*
Jaye Rancourt