UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>MICHAEL DARCY,<br>Defendant. | No. 25-cr-81-SM |

**GOVERNMENT'S SENTENCING MEMORANDUM AND RESPONSE**

"That one felt pretty good." PSR ¶ 9. This was defendant Michael Darcy's response when confronted with a check that he fraudulently wrote to himself worth almost eight times his weekly pay. Over approximately six years, Darcy took advantage of his employer's trust and stole almost $345,000, including stealing more than quadruple his salary in 2024 alone. Accordingly, and for the following reasons, the Government requests the Court impose a 33-month term of imprisonment.

## I. Factual Background

Between 2006 and 2025, Darcy worked at Company 1, a small Hinsdale business that manufactures window hardware. PSR ¶¶ 5, 63. Victim 1, an elderly man, owned Company 1. PSR ¶ 5. Darcy was the sole employee and Operations Manager. PSR ¶ 5. Because of Darcy's long tenure at the company, Victim 1 trusted him to run the company's day-to-day operations. PSR ¶ 5. As a result, Darcy had access to and frequently used the company's checkbook. PSR ¶ 6. However, Victim 1 was the only authorized signatory. PSR ¶ 6. Therefore, Darcy was supposed to present all checks to Victim 1 for a signature. PSR ¶ 8.

In fall 2024, Victim 1 was reviewing his bank statements and noticed that $10,000 was missing from the company account. PSR ¶ 8. Victim 1 was unsure why profits were down while

sales were up. PSR ¶ 13. After noticing the missing funds, Victim 1 investigated further and found over six dozen unauthorized checks made payable to Darcy. PSR ¶ 8. Victim 1 knew they were unauthorized because the signatures on the checks were forged and the memo lines on the checks did not make sense. PSR ¶ 8. For example, one of the checks payable to Darcy was purportedly for "stamps," but Victim 1 never paid Darcy to purchase stamps. PSR ¶ 8. If the company needed stamps, Victim 1 would have paid the Post Office directly. PSR ¶ 8. Victim 1 then contacted the Hinsdale Police.

In his December 2024 interview, Darcy initially denied writing fraudulent checks. PSR ¶ 9. He falsely claimed the extra checks payable to himself were attributable to an owner's draw. PSR ¶ 9. Hinsdale Police asked about specific fraudulent checks, including one for $9,000 dated December 5, 2024. PSR ¶ 9. Darcy responded "that one felt pretty good." PSR ¶ 9. However, Darcy then confessed and said, "so here is the deal, I'm pretty well screwed then, let's just, I can, I'm screwed. I was desperate and, yeah, I did it." PSR ¶ 11. Darcy stated that he had debts from student loans and was trying to pay his child's private school tuition. PSR ¶ 11. However, a financial analysis of the stolen funds showed that Darcy used over $142,000—a plurality of the funds he stole—on pornographic websites by sending "tokens" to women for private chats. PSR ¶¶ 18, 20. Indeed, Darcy admitted to watching pornography during work. PSR ¶¶ 12, 20. Moreover, Darcy had deposited the stolen money into a personal account he kept separate from the joint account he had with his wife. PSR ¶ 17. Overall, between December 2019 and December 2024, Darcy embezzled $344,874.47, a majority of which he stole in 2024.

In August 2025, Darcy agreed to a second interview, this time with federal investigators. PSR ¶ 14. He said he began forging checks when he saw a copy of Victim 1's signature lying around. PSR ¶ 15. Darcy traced the signature against the window onto a check he made payable

to himself. PSR ¶ 15. Darcy admitted to concealing the fraud by recording the stolen funds under false entries in the company's accounting records. PSR ¶ 15.

## II. Guidelines Calculation

The Government agrees with Probation's calculated guidelines range from 33- 41 months based off a total offense level of 20 and a Criminal History Category of I. PSR ¶ 71. In reaching this conclusion, Probation applied a 12-level enhancement because the actual loss was $344,874,47. PSR ¶ 28. Probation further applied two-level enhancements for Darcy abusing a position of trust, PSR ¶ 31, and causing financial hardship for Victim 1. PSR ¶ 29.

The Defense objects to the substantial financial hardship enhancement. [Def. Memo at 3]. The Court should overrule Defense' objection because there is sufficient evidence to show that the embezzlement of almost $350,000 caused substantial financial hardship to Victim 1.

### A. Substantial Financial Hardship

A two-level enhancement for causing financial hardship to Victim 1 is appropriate under USSG § 2B1.1(b)(2)(A)(iii). In determining substantial financial hardship, "the court shall consider, *among other factors*, whether the offense resulted in the victim —

> (i) becoming insolvent;
> (ii) filing for bankruptcy under the Bankruptcy Code
> (iii) suffering substantial loss of a retirement, education, or other savings or investment fund;
> (iv) making substantial changes to his or her employment, such as postponing his or her retirement plans;
> (v) making substantial changes to his or her living arrangements, such as relocating to a less expensive home; and
> (vi) suffering substantial harm to his or her ability to obtain credit."

USSG § 2B1.1 App. Note (4)(F) (emphasis added).

Here, Victim 1's impact statement implicates factors (iii) and (iv) because he will prolong his retirement plans indefinitely and return to work full-time. [Victim Impact Statement; PSR

¶ 22] The defense distorts Victim 1's patience and his goodwill toward Darcy, arguing that Victim 1 "postponed his retirement because of the loss of . . . Darcy as an employee rather than the loss of funds." [Def. Memo at 4] This is nonsense. Victim 1 lost almost $350,000—a huge sum of money for any individual heading into retirement. That sum of money could have paid for Darcy's replacement for more than four years. That Victim 1 did not fire Darcy immediately after discovering the initial fraudulent checks in 2021, PSR ¶ 13, is a testament to Victim 1's character and shows how cold and calculating Darcy was. Rather than express remorse for his actions, Darcy doubled down and kept stealing for another four years. And after being caught again in 2024, Darcy himself acknowledged that Victim 1 allowed him to keep working to get counseling, PSR ¶ 54, not because Victim 1 did not want to do the job himself. In short, Victim 1 is working because he must recover from the lasting damage that Darcy inflicted.

In addition, the enumerated factors are not all encompassing, and the court may consider other factors. Substantial financial hardship determinations are not linked to a specific monetary value but rather include the individual circumstances of the victim. *See United States v. Iwuanyanwu*, 69 F.4th 17, 24-25 (1st Cir. 2023) (upholding finding that theft of $6,000 in one month constituted substantial financial hardship for victim with $1,000 monthly income). Courts "may make reasonable inferences about the victims' financial circumstances and about their level of financial harm, so long as those inferences find some support in the record." *United States v. Aderinoye*, 33 F.4th 751, 757 (5th Cir. 2022) (citing *United States v. Howder*, 748 Fed. Appx. 637, 644 (6th. Cir. 2018)).

Here, Victim 1 is an elderly man and was on the edge of retirement when he uncovered Darcy's crimes. Darcy stole almost $345,000 from Victim 1. Victim 1 may be a business owner, but he is not a wealthy owner of a large corporation. Company 1 is a small business

dealing with window fixtures in rural New Hampshire. $344,874.47 is an obscene of money for a small business to lose. That amount could have funded an employee for years. Victim 1 clearly suffered substantial financial loss and the enhancement is proper.

## III. Argument

The sentencing statute, 18 U.S.C. § 3553, sets forth the factors district courts must consider in imposing a just sentence—one which is "sufficient but not greater than necessary."18 U.S.C. § 3553(a). Those factors include "the nature and circumstances of the offense," "the history and characteristics of the defendant," "the need to avoid unwarranted sentence disparities among defendants," and the "need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law," and "to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(1), (2), & (6).

Here, Darcy requests a time served sentence followed by a term of supervised release. [Def. Memo at 1] But Darcy has not served a day in prison—the Government proceeded on summons in this case and did not seek his detention pretrial. Darcy is thus seeking no imprisonment whatsoever, which is a stunning 100% downward variance from the Guidelines range of 33-41 months. Such extreme deviation requires "extraordinary justification," which does not exist in this case. *United States v. Carlson*, 498 F.3d 761, 765 (8th Cir. 2007) (vacating probationary sentence in tax fraud case where Guidelines range was 18-24 months).

### A. Nature and Circumstances of the Offense

$345,000 is an egregious amount for one man to steal. But Darcy compounded his crime by stealing not from a large corporation, but rather an elderly small business owner. Darcy abused the trust Victim 1 placed in him. And this is hardly a case of a defendant getting back at a cruel boss. On the contrary, Victim 1 was kind to the defendant and assisted in paying for

Darcy's child's private school tuition. PSR ¶ 13. When Victim 1 caught Darcy embezzling funds five years ago, he did not fire Darcy then because he felt sorry for Darcy. PSR ¶ 13. Rather than thanking Victim 1 for his generosity, Darcy repaid him by stealing more and more money. He said once he started stealing that he could not stop. PSR ¶ 11. He did not stop because he did not have to. After almost 18 years, Victim 1 trusted Darcy. No one was checking these fraudulent transactions.

Moreover, this is not a situation where Darcy was using the stolen money to live day-to-day. While Victim 1 was helping pay for Darcy's child's schooling, Darcy was taking Victim 1's money to spend on pornography and chat with women on adult websites. This was Darcy stealing for his own vices. Darcy claims he was trying to fill a void from a lack social interaction during the COVID pandemic. [Def. Memo at 7] That is no excuse for embezzling almost $350,000. Hundreds of millions of Americans struggled through the exact same restrictions during the pandemic without stealing from an elderly victim. Darcy could have undertaken a myriad of other avenues to overcome isolation, such as finding new hobbies. It is farcical for Darcy to use pandemic loneliness to justify stealing from his employer to pay "cam girls" on pornographic websites. Darcy had no excuse or justification for his actions.

**B. History and Characteristics of the Defendant**

Darcy reports that he grew up in a lower income household but did not face any abuse or traumatic events and overall considered his childhood good. PSR ¶ 47. He served his country in the Navy for several years as well. PSR ¶ 60. While the Government commends Darcy for his military service, it is important to remember that members of the military are charged with protecting American civilians. By stealing from an elderly small business owner, Darcy inflicted great harm on a civilian and represents the opposite of what the military stands for.

Further, while Darcy notes his addictive tendencies, this does not justify a downward variance, let alone the magnitude of the variance he seeks. Darcy was aware he had a problem. Rather than seeking out help, he not only continued his theft but tried to hide it for years. He forged dozens of checks and doctored the company accounting records to cover his tracks. He deposited the checks into an ATM into an account his wife could not access. These are hallmarks of a fraudster. Overall, there is nothing in Darcy's history and characteristics justifying a downward variance from the Guidelines.

Separately, Darcy suggests that he should receive credit because he notified the Government of the sale of his home. [Def. Memo at 9] His share of the residual proceeds of that sale will largely be applied towards restitution. While the Government appreciates Darcy coming forward with information about the pending sale, it is important to note that the Government would have inevitably garnished proceeds of that sale anyways. In a similar vein, Darcy suggests that a downward variance is appropriate because it would allow him to "work and pay [Victim 1] back for his illegal conduct." [Def. Memo at 10] But that has the principles of federal sentencing reversed. The more a defendant steals, the larger the restitution obligation will be. And the more a defendant steals, the higher the Guidelines range will be. Taken to its logical conclusion, Darcy contends fraudsters should get less time because they inflicted more damage.

**C. The Need for Deterrence and to Promote Respect for the Law**

When drafting the sentencing statute, Congress specifically noted that general deterrence is particularly important for white-collar criminals. Specifically, Congress stated "Major white collar criminals often are sentenced to small fines and little or no imprisonment. Unfortunately, this creates the impression that certain offenses" are punished so lightly that the consequences

"can be written off as a cost of doing business." S. Rep. No. 98-225, at 76 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3259.

This is a serious white-collar offense and demands a commensurate sentence. Here, Darcy stole almost $350,000 from a small business owned by an elderly man who has postponed retirement. He siphoned off the funds over the course of several years and carefully took steps to conceal his fraud by doctoring financial records. A probationary sentence is plainly inappropriate given the breadth and scope of the defendant's crime. A sentence of 33 months, which is at the bottom of the applicable Guidelines range, is the bare minimum to not only deter prospective wrongdoers, but also promote public confidence that the justice system will adequately punish fraudsters like the defendant.

## IV. Conclusion

For the foregoing reasons, the Government respectfully requests the Court impose a sentence of 33 months.

DATED: November 4, 2026

ERIN CREEGAN
United States Attorney

By: /s/ Alexander S. Chen
Alexander S. Chen
Sarah A. Gaughan
Assistant U.S. Attorneys